Filed 10/11/24  P.v. Giammarco CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B330474 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA092714) |
| v. | |
| MARINO DANIELE GIAMMARCO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hilleri G. Merritt, Judge.  Affirmed.

Kravis, Graham, & Zucker, Thomas Ian Graham and Bruce Zucker for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Marino Daniele Giammarco of one count of continuous sexual abuse on T.B., a child under 14, and one count of lewd act upon T.B. The jury also found all alleged aggravating factors true, and the trial court sentenced defendant to 16 years, the high term for the continuous sexual abuse count, and a consecutive term of two years, one-third the middle term, on the lewd act count. On appeal, defendant argues the trial court committed evidentiary and instructional errors and abused its discretion in the amount of noneconomic damages awarded as restitution to T.B. and his parents. We disagree and affirm.

Defendant asserts the trial court erred in admitting portions of defendant's Instagram account in which he "liked" pictures of minor boys, including a picture of T.B. The court gave a limiting instruction as to the relevance of the Instagram pictures and testimony concerning defendant's Instagram account. We conclude defendant has failed to demonstrate prejudice from the admission of this evidence.

Defendant also argues the trial court's instructions on the aggravating factors were incomplete. Even assuming the court's instructions were incomplete, he demonstrates no prejudice entitling him to resentencing.

As restitution, the trial court awarded T.B. and his parents collectively $850,000 in noneconomic damages. Defendant argues that the amount was an abuse of discretion. We disagree. Once all the evidence is considered, we conclude the trial court acted within its discretion. T.B. suffered extensively from defendant's repeated abuse so much so that his entire family moved out of state to keep T.B. safe. T.B.'s parents also testified to their

personal suffering from what defendant had inflicted on their son and his betrayal of the family.

## FACTUAL BACKGROUND

Defendant was born April 11, 1990.  T.B., who was born in 2006, testified he was nine years old when he met defendant.  Defendant bought T.B. gifts including phones, x-box controllers, and haircuts.  Defendant attended T.B.'s sixth grade graduation, went to the hospital when T.B. had surgery, and accompanied the family on a trip to Los Vegas.  T.B. watched movies with defendant and went to the zoo with him.  Defendant invited T.B. on a trip to San Francisco in approximately 2019.  T.B. told defendant he did not want to go.

T.B. testified that defendant touched his penis 20 to 25 times.  Defendant either squeezed T.B.'s penis or placed his hand on top of it.  T.B. testified he was between 10 and 12 years old when these incidents occurred.  T.B. further testified defendant tried to touch T.B.'s penis "[a]ny time that nobody else was around."  T.B. recounted that defendant would touch himself at the same time he touched T.B.  According to T.B., defendant "would always reach underneath himself . . . underneath his boxers and would leave his hands there . . . ."  T.B. did not tell his family or anyone else about defendant's conduct.

Defendant told T.B. that he loved T.B. approximately 15 to 20 times.  In a text message exchange, defendant told T.B. defendant loved him.  In another text, defendant told T.B., "Night, Bubba.  Love you."  Defendant tried to kiss T.B. about 10 times.

T.B. did not recall each time defendant touched his penis and did not remember exact dates or times, but he described the following specific incidents.  T.B. testified that defendant

accompanied the family on a trip to Washington. During that trip, defendant asked T.B. to lie down next to him and cuddle. T.B. refused. During the same trip, defendant put his hand underneath T.B.'s underwear and touched T.B.'s penis.[1]

T.B. remembered another occasion when defendant was at his house. Defendant put a blanket over T.B. and then rubbed T.B.'s penis under the blanket. Defendant touched T.B.'s penis while T.B. was seated on the couch in his home approximately 10 times.

Once, when T.B. was showering, defendant walked into the bathroom. T.B. covered his penis and defendant kissed T.B.'s forehead.

Defendant also touched T.B.'s penis when T.B. and defendant were at T.B.'s father's business. T.B. remembered becoming upset and "slamm[ing]" defendant "into the concrete wall behind" them.

On April 9, 2019, T.B., his family, and defendant were at a restaurant for dinner. While the group was seated for dinner, defendant put his hand on T.B.'s thigh and rubbed T.B.'s inner thigh. T.B. told defendant not to touch him.

T.B.'s father (father) testified he met defendant in 2016 and defendant volunteered at the family business and accompanied the family on vacations. T.B.'s family treated defendant as a family member. Defendant visited the family home four or five times weekly.

Father observed defendant touch T.B.'s thigh on April 9, 2019 when the family and defendant were at a restaurant for

---

[1] By instruction, the court limited the jury's consideration of this evidence because it occurred in Washington state.

4

dinner. When father learned of defendant's molestation of T.B., father "[b]roke down and felt like [he] had [himself] turned inside out." Father felt "like [he] had [his] heart and soul torn out of" him. Father testified, "My entire family was turned upside-down by what had went on. There was a lot of grief and distress going on . . . ."

T.B.'s mother (mother) testified that defendant frequently went to the family home, regularly visited at the family business, and accompanied the family on trips. Defendant donated blood when T.B. needed it and bought him gifts including phones and an x-box video console. The family referred to defendant as "uncle." T.B.'s family celebrated birthdays with defendant's family. Mother testified she did not allow T.B. travel to San Francisco with defendant.

A cousin, who was at the April 9, 2019 dinner, testified that he saw defendant place his hand on T.B.'s "upper inner thigh or groin area" three or four times during the dinner. "Defendant's hand was close enough to the groin to be inappropriate." Each time defendant touched T.B., T.B. would stiffen up and at least once said, " 'No, don't,' or, 'Stop.' "

## PROCEDURAL BACKGROUND

In an amended information, the People alleged one count of continuous sexual abuse of T.B., a minor under 14 years of age (count 1 occurring between August 1, 2016 and April 8, 2019) and in count 2, lewd or lascivious conduct on T.B., a minor under 14 years of age occurring on April 9, 2019. The People alleged multiple aggravating circumstances: (1) the victim was particularly vulnerable; (2) the manner defendant carried out the offenses indicated planning, sophistication, or professionalism; (3) defendant took advantage of a position of trust and confidence

5

to commit the offense; and (4) defendant groomed his victim and repeatedly molested him. The People alleged the crimes and objectives were predominately independent of each other. The People also alleged defendant committed the crimes at different times and separate places as opposed to so close in time and place as to constitute a single period of aberrant behavior.

The trial court denied defendant's motion in limine to exclude photographs defendant "liked" in his Instagram account. As to the evidence from defendant's Instagram account, the court instructed the jury it could consider the evidence for the "limited purpose to determine if the defendant had the specific intent to commit the offenses charged in Counts 1 & 2. The court further instructed the jury, "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime." With respect to the continuous sexual abuse, the court instructed the jury on the following element of that crime: "[D]efendant engaged in three or more acts of substantial sexual conduct or lewd or lascivious conduct with the child."

Relevant to this appeal, the court also instructed the jury that the People must prove defendant acted with a "particular intent." The court further instructed the jury to find defendant guilty of "Continuous Sexual Abuse, as charged in count 1 and Lewd Act Upon a Child Under Age 14, as charged in count 2, that person must not only intentionally commit the prohibited act, but must do so with a specific intent." The court instructed the jury that each crime required the specific intent to arouse the perpetrator or the child.

The trial occurred in 2023. At trial, no witness testified for the defense.

6

The jury convicted defendant of both counts. After the verdict, the court instructed the jury on each aggravating factor. With respect to the aggravating factors, the court instructed the jury that the People were required to prove each allegation beyond a reasonable doubt and defined beyond a reasonable doubt. The court also told the jury that the "People must prove beyond a reasonable doubt that the victim [T.B.], was particularly vulnerable during the commission of these crimes." The court further instructed the jury the "People must prove beyond a reasonable doubt that the defendant committed these crimes utilizing planning, sophistication or professionalism." The court instructed the jury that the "People must prove beyond a reasonable doubt that the defendant had a position of trust or confidence with the victim, [T.B.], that he took advantage of that in the commission of these crimes."

The court instructed the jury that the "People must prove beyond a reasonable doubt that the defendant's objective in each crime—each crime was independent of the objective in the other crime." The court told the jury that the "People must prove beyond a reasonable doubt that the commission of these crimes were committed at different times or in separate places, thus indicating more than a single period of aberrant behavior." As for the "grooming" and repeated molestations aggravating factors, the court also instructed the jury the "People must prove beyond a reasonable doubt that in the crimes committed in this case, the defendant groomed [T.B.] and repeatedly molested" him. The court instructed the jury "[e]ach of these allegations is a separate charge. You must consider each allegation separately and return a separate finding for each one." Finally, the court

7

also instructed the jury that their verdict must be unanimous. The jury found all aggravating factors true.

As previously noted, the court sentenced defendant to the high term of 16 years for count 1 and a consecutive two-year term for count 2, representing one-third the midterm on that count. After a restitution hearing, the court awarded a total of $850,000 in restitution to T.B., his mother, and father.

## DISCUSSION

### A. Assuming the Trial Court Abused its Discretion In Admitting Evidence of Defendant's Instagram Account, Defendant Demonstrates No Prejudice

Over objection, the trial court allowed Instagram photographs to be admitted in evidence under Evidence Code section 1101, subdivision (b). Section (a) of that statute precludes the admissions of character evidence to prove conduct on a specific occasion. (Evid. Code, § 1101, subd. (a).) Section (b), however, provides: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact" such as intent. (*Id.*, subd. (b.).)

When considering defendant's motion in limine to exclude the Instagram evidence, the trial court stated, "This does not rise to . . . child pornography" but it helps a "jury understand the intent when if they believe that [T.B.] was touched, what the intent is with the touching." The court found defendant's "interest in boys" the same age as T.B. was relevant. The court reasoned that the only way to prove a specific intent crime without an admission was to look at circumstantial evidence. The court stated, "I must let in under [Evidence Code section] 352

8

relevant and not unduly prejudicial evidence that will help the jury decide whether or not the People have met their burden on counts one and two . . . ."

On appeal, defendant argues the trial court erred in admitting the Instagram photographs to establish defendant's intent. According to him, the fact he looked at the photographs "is not probative of his sexual intent towards children and thus is irrelevant" but was extremely prejudicial. Defendant explains, "[T]here was little, if any, evidence to support a conviction for each count of the Information other than the testimony of T.B." and the photographs "portrayed him as a child molester, even though he merely pressed the 'like' button on the Instagram cite for photographs of the teenage boys."

We begin with additional background and then turn to defendant's arguments.

### 1.   *Additional background*

T.B.'s cousin testified defendant followed 4,000 accounts on Instagram and approximately one third of them was of "little boys roughly aged . . . five to twelve" years of age. T.B.'s cousin also testified several of the pictures defendant "liked" on Instagram showed young boys in swimsuits or underwear. One picture was of defendant with T.B. Another was of an infant in a diaper. T.B.'s cousin provided screen shots of defendant's Instagram account to police.

T.B.'s mother also testified that defendant's Instagram account showed he "liked or showed interest in" young boys. T.B.'s mother testified the persons in the photographs were boys "some of them resembling" T.B. One of the photographs defendant "liked" was a picture of T.B. without a shirt. T.B.'s mother further testified that after the family notified the police

9

about defendant's conduct towards T.B., defendant's Instagram account was deleted.

The prosecutor argued the fact defendant "liked" photographs on Instagram of "young boys who are shirtless" demonstrated he was "after" T.B. because of a "sexual intent." The prosecutor also argued the jury could infer sexual intent from defendant's touching his own penis while touching T.B.  In response, defense trial counsel argued, "[W]hen you look at the photos, they're trying to show you the photos to take a logical leap.  One of the things you cannot do in jury deliberations is speculate.  They're asking you to speculate because he 'liked' some photos, . . . some of them are boys with no shirts on, and they're trying to say that's a sexual intent, gratification.  They have not proved that correlation.  It's speculation . . . ."

## 2. *Even assuming the trial court should have excluded the Instagram photographs, defendant demonstrates no prejudice*

The parties agree that that reversal for improperly admitted evidence requires a showing of prejudice.  (*People v. Carter* (2005) 36 Cal.4th 1114, 1152.)  Assuming arguendo it was error to admit the evidence regarding defendant's Instagram photographs, there was no prejudice because it is not reasonably probable defendant would have obtained a more favorable result absent this assumed error.

The jury found T.B.'s detailed testimony credible after extensive cross examination.[2]  T.B. testified defendant repeatedly

_____

[2] The court instructed the jury:  "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone."

10

touched T.B.'s penis when they were alone and that defendant touched himself while touching T.B. There was also testimony demonstrating opportunity and defendant's unusual interest in being with T.B., for example, traveling out of town with T.B.'s family, defendant's frequent presence in the boy's home and at his father's business, defendant's intimate text messages to T.B ("Night, Bubba. Love you,"), gifts provided to T.B., and defendant's attempt to take T.B. on an overnight trip to San Franciso a few months prior to the revelation of the molestation.

In addition, there was the testimony of T.B.'s father and, even more graphically, the testimony of the cousin, both of whom observed defendant touching T.B.'s thigh in a sexual manner at the restaurant the family attended. This evidence demonstrates that it is not reasonably probable defendant would have obtained a more favorable result had the trial court excluded the evidence from defendant's Instagram account.

Finally, defendant argues the evidence from defendant's Instagram account allowed the jury to view him as a "child molester." The instructions, however, told the jury not to consider the evidence for that purpose. The instructions prohibited the jury from concluding that "defendant has a bad character" based on the evidence of defendant's Instagram account.

## B. Even Assuming Defendant Has Not Forfeited His Claims of Instructional Error Concerning the Aggravating Factors, and Even Further Assuming Error, Defendant Fails To Show Prejudice

Senate Bill No. 567 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) became effective on January 1, 2022. Senate Bill

11

No. 567 amended Penal Code[3] section 1170 to require that trial courts may only impose the upper term where factors in aggravation have been stipulated to by the defendant or found true beyond a reasonable doubt at a jury or court trial. (§ 1170, subd. (b)(1) & (2).) Here, the factors in aggravation were submitted to the jury but defendant argues the court's instructions on the aggravating factors were incomplete. Defendant contends the trial court should have explained the phrases "particularly vulnerable," "position of trust or confidence," and "planning, sophistication, or professionalism" when the court instructed the jury on the aggravating factors.

---

[3] Undesignated statutory citations are to the Penal Code.

Section 1170, subdivision (b)(1) provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." Subdivision (b)(2) provides: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense."

12

Defendant did not request clarification of any of these phrases in the trial court and the People argue defendant's challenges to the jury instructions on appeal are forfeited.  In his reply brief, defendant argues that any objection would have been futile and therefore his challenges are not forfeited.

"In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case." (*People v. Martinez* (2010) 47 Cal.4th 911, 953.)  " ' "A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." ' [Citation.]" (*People v. Hill* (1992) 3 Cal.4th 959, 997, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)  Here, defense counsel did not request any clarifying language in the trial court and such a request would not have been futile because the trial court repeatedly asked for counsel's assistance in drafting instructions on the aggravating factors based on the then recent change in the law requiring submitting the aggravating factors to a jury.[4]

We recognize the trial court did not have the benefit of the instructions promulgated by the Judicial Council of California, which described the aggravating factors in more detail than the

_____

[4] The court told counsel that it would like counsel to "look at" the instructions on the aggravating factors.  The court indicated it would show counsel the instructions and then they could "talk about it."  The court asked counsel to "take a look" at the court's proposed instructions.  The court indicated that it wanted to make sure the instructions were "acceptable" to counsel.

13

instructions the trial court gave. (See CALCRIM Nos. 3223 [defining position of trust or confidence], 3226 [defining particularly vulnerable victim], 3230 [defining planning, sophistication, or professionalism].) Assuming arguendo the court erred in its instructions on the aggravating factors, defendant demonstrates no prejudice from these purported instructional errors. We thus must affirm a jury verdict if the instructional error was harmless. (See *People v. Hendrix* (2022) 13 Cal.5th 933, 941.)

In asserting that he suffered prejudice from the assumed instructional error, defendant cites only to cases in which the trial court was faulted for deciding the aggravating factors without submitting them to a jury trial. (See *People v. Flores* (2022) 75 Cal.App.5th 495, 500 [considering the consequence of the denial of a jury trial on aggravating circumstances]; *People v. Lopez* (2022) 78 Cal.App.5th 459, 465–466 [same]; *People v. Dunn* (2022) 81 Cal.App.5th 394 [same]; *People v. Lewis* (2023) 88 Cal.App.5th 1125, 1139 [same].) Our Supreme Court recently disapproved of these cases. (*People v. Lynch* (2024) 16 Cal.5th 730, 760–763.) In any event, they do not apply here because in contrast to the legal authority defendant cites, defendant's jury made a finding beyond a reasonable doubt with respect to each aggravating factor.[5]

Defendant also provides *no* argument the alleged instructional error in failing to define the phrases "particularly vulnerable," "position of trust or confidence," and "planning,

---

[5] The Supreme Court decided that when a court, rather than a jury, makes a finding on the aggravating factors, the appellate court considers prejudice under the *Chapman* standard. (*People v. Lynch*, *supra*, 16 Cal.5th at pp. 760–763.)

sophistication, or professionalism," prejudiced him under either the *Chapman v. California* (1967) 386 U.S. 18 or *People v. Watson* (1956) 46 Cal.2d 818 standards. Under the *Chapman* standard, an error is prejudicial and requires reversal of the conviction unless it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman*, at p. 24.) "Under the *Watson* standard, prejudicial error is shown where ' " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." [Citation.] . . . [Citation.]' [Citation.]" (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050.)

Under either standard, defendant did not suffer prejudice. The evidence establishing that T.B. was a particularly vulnerable victim was undisputed and overwhelming. T.B. was many years younger than defendant, and susceptible to defendant's repeated acts whenever defendant had the opportunity to touch T.B. The undisputed evidence also showed defendant was in a position of trust or confidence in that T.B.'s family referred to defendant as uncle and treated him as a family member, allowing defendant into the family home multiple times a week. Defendant had regular access to T.B. in T.B.'s home, the family business, and on family vacations. Defendant states, "Planning refers to conduct before the crime and preparing for its commission," and here it was undisputed that defendant bought T.B. gifts and haircuts and even requested to take him to San Francisco. Given the substantial nature of the evidence in support of the aggravating factors and defendant's failure to identify any evidence contradicting any aggravating factor, we conclude that any error

15

in failing to define the challenged phrases more specifically was harmless beyond a reasonable doubt under the *Chapman* and *Watson* standards.

**C.     Defendant Does Not Show the Trial Court Abused its Discretion In Imposing the Upper Term Sentence on the Continuous Sexual Molestation Conviction**

Embedded in his claim of instructional error, defendant also argues that the " 'the court generally cannot use a single fact both to aggravate the base term and to impose an enhancement . . . .' [Citation.]" Defendant implies that several aggravating factors were based on the same underlying fact. Defendant further asserts the trial court improperly used the aggravating factor of repeated sexual molestation when, according to him, the offense of continuous sexual molestation required repeated molestation. Defendant did not raise these issues in the trial court and does not argue or show that they are preserved for our review. In any event, assuming that they are preserved, defendant demonstrates no reversible error.

### 1.     *Additional background*

The court instructed the jury that continuous sexual abuse required "three or more acts of substantial sexual conduct or lewd or lascivious conduct with the child." As set forth in our Background, *ante*, the court instructed the jury with respect to the aggravating factor that "defendant groomed" T.B. "and repeatedly molested him." As previously noted, the jury found these aggravating factors true.

At the sentencing hearing, defense counsel requested the court exercise its discretion to impose the lowest term possible for defendant and emphasized that defendant had no prior

16

convictions.  The court stated, "The court has to see whether factors in aggravation so outweigh any factor in mitigation as to justify the high term."  The court stated that it was "trying to do what is just and equitable based on the law as it is today."  With respect to the aggravating factors, the trial court stated the jury found T.B. was "particularly vulnerable," "there was planning, sophistication or professionalism, and defendant "took advantage of a position of trust and confidence," which the court described as "the most damning of them."  The court further found, "In this court's estimation the factors in aggravation so vastly outweigh the factor in mitigation which I do acknowledge he has no prior criminal record of conviction, that I'm exercising my discretion and choosing the high term of 16 years as to count one."  The court imposed one-third the midterm for count 2 which totaled two years.  The court indicated that it was exercising its discretion to impose consecutive sentences.

### 2.    *Analysis*

We generally review criminal sentencing for abuse of discretion.  (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.) We review legal questions de novo.  (*People v. Tirado* (2022) 12 Cal.5th 688, 694).

Defendant's first assertion—that the court cannot use a single fact to aggravate a base term and impose an enhancement[6]—is irrelevant because the court imposed *no* enhancements.  Second, although defendant asserts that several

---

[6] Section 1170, subdivision (b)(5) provides in pertinent part:  "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."

17

aggravating factors were based on the same fact, he identifies *no* such fact.

Finally, although there potentially could be overlap between continuous sexual molestation (the offense) and repeated molestation (part of the aggravating factor), that potential overlap does not support resentencing defendant. First, although continuous sexual molestation requires three occurrences, T.B. testified that defendant touched his penis 25 times. That evidence was undisputed. Thus, this case involved repeated molestation far beyond that required for the offense of continuous sexual molestation. Additionally, the "grooming" element of the aggravating factor is not an element of the offense of continuous sexual molestation.

Significantly, the record also indicates even absent the aggravating factor of repeated molestation, the trial court would have nevertheless imposed the high term and defendant does not argue otherwise. The trial court noted numerous other factors in aggravation and found that the factors "so vastly outweigh" the single factor in mitigation (defendant's lack of a prior conviction). Further, the court found "most damning" defendant's taking advantage of a position of trust and confidence, which as explained above, substantial evidence in the record supports. In sum, defendant does not argue or show that the court would not have imposed the high term for the continuous sexual abuse absent the aggravating factor of repeated sexual abuse.

## D.     Defendant Fails To Demonstrate the Trial Court Erred in its Award of Restitution

On appeal, defendant does not contest T.B. or his parents' entitlement to noneconomic restitution but challenges the amounts the trial court awarded. Defendant argues the trial

court "simply took the amount requested by the People, $50,000, as the base number" without any explanation. Our record does not include the People's request to which defendant refers.

We begin with additional background and then consider defendant's argument that the amounts of restitution the trial court ordered constitutes an abuse of discretion. (*People v. Montiel* (2019) 35 Cal.App.5th 312, 318 [where it does not involve statutory interpretation appellate court reviews restitution order for abuse of discretion]; *People v. Lehman* (2016) 247 Cal.App.4th 795, 801 [a restitution order will not be reversed unless it is arbitrary or capricious].)

### 1. *Additional background*

At the restitution hearing, the trial court noted it had read the People's brief[7] and considered the case of *People v. Smith* (2011) 198 Cal.App.4th 415, 431 (*Smith*), which holds that restitution for committing a lewd act on a child is not limited to economic damages. "Noneconomic damages are 'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.' [Citation.]" (*Ibid*.) The trial court indicated that in a sex crime case, it had authority to order restitution of noneconomic losses and that in a sex crime case, family members are entitled to restitution. The court relied on *People v. Montiel, supra,* 35 Cal.App.5th 312, which holds that "parents of children who are sexually abused may be awarded

---

[7] The People also attached a statement from T.B.'s mother, which the court indicated it was considering. That attachment is not included in our record.

19

restitution for noneconomic losses." (*Id.* at pp. 320–321.) The court also stated it could consider the evidence at trial and the sentencing hearing. Defense counsel did not below, and does not on appeal, dispute any of these propositions.

T.B.'s mother testified at the restitution hearing. One day, when defendant drove by T.B.'s school in violation of a restraining order, T.B. was distraught. When a police officer escorted T.B. out of school, T.B. was an "emotional wreck" and was "scared." On another day, mother saw defendant near T.B.'s school after there was a restraining order in place. She recorded defendant's vehicle on video and was afraid that defendant's presence would upset T.B.

The family moved out of state so that T.B. could feel safer. Mother testified T.B. had to move out of his home and watch his father shut down the family business. T.B. was diagnosed with posttraumatic stress disorder and required a service dog to assist him. T.B. was in therapy, but it was "very difficult for him to talk about" the abuse and the therapy was "painful" for him. After testifying at trial, T.B. was "crying" and felt "belittled."

T.B. had "such bad days" for which mother could not provide relief from his distress. Mother explained, "[A]s a parent what that pain, watching him go through what he goes through on a daily basis feels like" was indescribable. When asked about how she felt when she initially learned of the abuse, mother stated, "There is nothing as a parent that can prepare you for watching your son go through that pain when you've watched your family literally do everything for [defendant] in regard[ ] to vacations and all that and watch the pain of your son having to come truthful about what has happened." "I have taken him from his home. . . . It's all been taken from us. We didn't do

20

anything wrong. T.B. didn't do anything wrong." Mother testified the father blames himself for allowing defendant around T.B. Mother also testified that father felt "defeated" that he had to shut down the business he owned for 13 years.

The court stated that in calculating restitution, it would not engage in speculation. The court ordered T.B. receive $50,000 a year for seven years and mother and father each receive $50,000 a year for five years, totaling $850,000.

### 2.   *Analysis*

Although defendant argues the trial court abused its discretion in awarding $850,000 in restitution, he fails to summarize the evidence that supports the trial court's exercise of that discretion. The following evidence shows the trial court's exercise of its discretion was not arbitrary or capricious.

T.B. suffered from defendant's conduct and even at the time of the restitution hearing in June 2023 (four years after the last incident), endured emotional pain, had difficulty in therapy, and required the support of an assistance dog. T.B.'s parents—who once referred to defendant as uncle—had to uproot their personal and professional lives. They moved out of state and relinquished their business to protect T.B. The record does not include any estimate when T.B.'s mental anguish would improve and defendant does not show that considering the frequent abuse T.B. suffered, the $350,000 awarded to him was unreasonable.

The record supports that T.B.'s parents also suffered extensively. Father testified he "broke down and felt like [he] had [himself] turned inside out." Father felt "like [he] had [his] heart and soul torn out of" him. Father testified, "My entire family was turned upside-down by what had went on. There was a lot of grief and distress going on. . . ." Mother testified that "as

21

a parent what that pain, watching him go through what he goes through on a daily basis feels like" was indescribable. Mother further testified she blamed herself for allowing defendant to become a part of the family. In challenging the trial court's exercise of its discretion, defendant ignores this evidence. For all these reasons, the $250,000 award to each parent was not unreasonable given defendant's abuse of their son and their trust forced them to uproot their lives and their livelihood, and to watch their son suffer significant and lasting emotional pain.

Notwithstanding defendant's contrary argument, *Smith*, *supra*, 198 Cal.App.4th 415 supports the trial court's $850,000 award. In *Smith*, the defendant molested the victim from the time she was eight years old until she was 15, including digitally penetrating her vagina, touching her while she touched him, orally copulating her, and penetrating the victim's vagina with his penis. (*Id*. at pp. 419–421.) Defendant continued having sex with the victim until she was 26 years old. (*Id*. at p. 421.) As in this case, the defendant was convicted of one count of committing a lewd act on a child and one count of continuous sexual abuse. (*Id*. at pp. 419–420.) The court ordered the defendant pay the victim $750,000 in noneconomic damages. (*Id*. at p. 420.) The trial court reached this amount by multiplying $50,000 a year for 15 years, the number of years the defendant abused the victim. (*Id*. at pp. 432–433.)

The appellate court affirmed this $750,000 restitution award. (*Smith*, *supra*, 198 Cal.App.4th at p. 436.) "[T]he restitution order for $750,000 in noneconomic damages for years of sexual abuse does not shock the conscience or suggest passion, prejudice or corruption on the part of the trial court." (*Ibid*.) The court rejected the argument that the restitution should end when

22

the abuse ended. Instead, it found the victim's psychological harm continued after the abuse. (*Id*. at p. 437.) *Smith* also noted authority upholding a $1.5 million dollar award in 1998 to a student molested by her teacher. (*Smith*, at pp. 436–437, citing *Ortega v. Pajaro Valley Unified School Dist.* (1998) 64 Cal.App.4th 1023, 1059–1061.)

Here, the court awarded T.B. less than half the restitution awarded in the 2011 *Smith* case. The evidence showed T.B. continued to suffer psychological harm long after the abuse ended. We conclude the undisputed evidence supports the trial court's $350,000 award to him. The $250,000 award to each of T.B.'s parents also was not an abuse of discretion where the evidence showed they suffered psychological harm seeing their child suffer and where they were forced to move to another state to assist their child when defendant violated a restraining order on multiple occasions even after the criminal charges were filed against him.

Finally, defendant argues the nature of the abuse in this case was less severe than the abuse in *Smith*. We fail to discern how that argument assists defendant when, as noted above, the victim in *Smith* received far more restitution than T.B. As also noted above, T.B. and his parents received significantly less collectively than the $1.5 million in noneconomic damages the victim was awarded in a case on which *Smith* relied. In short, defendant demonstrates no abuse of discretion in the trial court's award of restitution. (See *People v. Lehman, supra*, 247 Cal.App.4th at p. 801 [no abuse of discretion where there is a rational and factual basis for the amount of restitution].)

## DISPOSITION

The judgment is affirmed.
<u>NOT TO BE PUBLISHED.</u>


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



KELLEY, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.